**COMMODITY EXCHANGE, INC., Plaintiff,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Defendant.**

**No. 81 Civ. 3698.**

United States District Court, S. D. New York.

July 29, 1982.

Baer, Marks & Upham, New York City, for plaintiff; Mark A. Buckstein, Barry J. Mandel, Allan Dinkoff, New York City, of counsel.

Dennis A. Dutterer, Gen. Counsel, Pat G. Nicolette, Deputy Gen. Counsel, Gregory C. Glynn, Associate Gen. Counsel, Glynn L. Mays, Asst. Gen. Counsel, Paul M. Architzel, Elizabeth M. Knoblock, Commodity Futures Trading Commission, Washington, D. C., for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

This is an action by Commodity Exchange, Inc. ("Comex") for a declaratory judgment and an injunction against the enforcement of a decision by the defendant, Commodity Futures Trading Commission (the "Commission") which disapproved Comex's "straddle rules," which have been in effect since approximately 1970. The parties are in accord that there are no disputed fact issues; accordingly, each moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In 1974, after an extensive re-examination of federal legislation of futures trading which experience had demonstrated, in many instances, had failed to achieve its intended purpose of public protection, Congress extensively amended the Commodity Exchange Act (the "Act")[1] as a "comprehensive regulatory structure to oversee the volatile and esoteric futures trading complex"[2] to ensure "fair practice and honest dealing on the commodity exchanges."[3] Among other matters, Congress created the Commodity Futures Trading Commission as an independent regulatory agency to administer and enforce its provisions and vested in the Commission broad rulemaking power.[4]

Comex is a non-profit membership corporation organized in 1933 to provide a market for the trading of futures contracts principally in gold, silver and copper. On July 18, 1975 it was designated by the Commission as a contract market to trade futures contracts.[5] Under section 5a(12) of the Act, all contract markets are required to submit to the Commission for approval all "bylaws, rules, regulations and resolutions" (collectively "rules") before they become effective.[6] Pursuant thereto, Comex submitted its rules to the Commission. Due to time constraints imposed by the Act, the new Commission was unable to conduct an in-depth study of the existing rules of the different boards of trade; consequently, it adopted Commission Rule 1.53 requiring contract markets to enforce their rules in effect on July 18, 1975 unless any such rule had been disapproved by the Commission.[7]

---

1. 7 U.S.C. § 1 et seq. (1980 & Supp.1982).

2. H.R.Rep.No.975, 93d Cong., 2d Sess. 1 (1974) [hereinafter "1974 House Report"].

3. S.Rep.No.1131, 93d Cong., 2d Sess. 2 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 5843, 5844; 1974 House Report, *supra* note 2, at 37 38, 48; *see generally Merrill Lynch, Pierce, Fenner & Smith v. Curran*, —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).

4. Commodity Futures Trading Commission Act of 1974, Pub.L.No.93–463, 88 Stat. 1389 (1972). *See generally British American Commodity Options Corp. v. Bagley*, 552 F.2d 482, 486 (2d

Cir.), *cert. denied*, 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977).

5. 40 Fed.Reg. 33,854 (1975).

6. 7 U.S.C. § 7a(12) (1980).

7. 17 C.F.R. § 1.53 (1981). *See* 40 Fed.Reg. 30,-107 (1975). Rule 1.53 provides:

   Each contract market shall enforce each bylaw, rule, regulation, and resolution, made or issued by it or by the governing board thereof or any committee thereof, which is in effect as of July 18, 1975 and which relates to terms and conditions in contracts of sale to

Section 5a(12) further provides that "after appropriate notice and opportunity for hearing" the Commission may disapprove any contract market rule it finds is in violation of the Act or its regulations. On June 30, 1980 the Commission invoked this authority for the first time by a public notice that it intended to consider whether to disapprove the Comex trading rules at issue here.[8] In April 1981, after proceedings detailed below, the Commission disapproved such rules.[9]

Comex challenges the disapproval on three separate grounds. First, it contends that the Commission violated its rights under the Administrative Procedure Act ("APA")[10] and the due process clause of the United States Constitution in that the Commission followed informal rulemaking procedures rather than formal rulemaking or adjudicatory procedures. Second, that the Commission based its decision on impermissible criteria. Third, that its decision was arbitrary and capricious and without adequate support in the record.

A commodity futures contract is a standardized agreement for the purchase or sale of a specified quantity of a commodity at a fixed date in the future.[11] The seller of a futures contract commits himself to deliver the commodity at a future time and the buyer agrees to accept delivery at an agreed upon price. A profit is made or a loss incurred through "trading" these contracts in advance of their execution dates. The trading is accomplished by purchasing or selling offsetting contracts for the same commodity and future date but at a different price.

The three Comex rules at issue here concern "straddle" trading of futures contracts. As described by the Commission:

> [a] "spread" or "straddle" is defined herein as the simultaneous sale of one or more contracts in a futures delivery month against the purchase of the same number of contracts in another futures delivery month in the same commodity. In contrast, an "outright" trade is the simple purchase *or* sale of a contract or contracts in a single delivery month. Any combination of listed futures delivery months may be used to execute a straddle transaction.[12]

Thus, a straddle involves holding two offsetting contracts but of different months. For example, a July-December silver straddle may be composed of a contract to buy silver for delivery in July at $12 per ounce and a corresponding contract to sell silver in December at $13 per ounce. The difference in price between the two "legs" of the straddle is called the differential.

A straddle can be accomplished in two ways. Under one method, "legging in," a trader constructs the straddle by executing two separate trades, one for each leg of the straddle. Alternatively, the straddle may be created by "trading the differential" where the traders first bid or offer on the size of the differential for a specific two-month combination. The differentials for any given straddle combination change over time allowing straddles to be traded for profit.[13]

---

be executed on or subject to the rules of such contract market or relates to other trading requirements, unless such bylaw, rule, regulation, or resolution has been disapproved by the Commission pursuant to section 5a(12) of the Act, or the amendment or revocation of such bylaw, rule, regulation or resolution has been approved by the Commission pursuant to section 5a(12) of the Act.

**8.** Proposed Disapproval of Contract Market Rules, 45 Fed.Reg. 43,820 (1980).

**9.** Notice of Disapproval, 46 Fed.Reg. 23,516 (1981).

**10.** 5 U.S.C. § 551 et seq. (1977 & Supp. 1982).

**11.** For a detailed discussion of futures trading *see Leist v. Simplot*, 638 F.2d 283, 286–88 (2d Cir. 1980), *aff'd, Merrill Lynch, Pierce, Fenner & Smith v. Curran*, —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).

**12.** Notice of Disapproval, 46 Fed.Reg. 23,516 at 23,516 n.2 (1981); *see also* Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment at 13–15 (hereinafter "Comex Brief").

**13.** Comex Brief at 13; Comment Letter of Mintz-Marcus & Co., Record 13, Appendix D at 2; Informational Memorandum, Record 6, at 6 n.8. The Commission's rulemaking record contains 18 separately paginated exhibits; "Record

The rules disapproved by the Commission were Comex General Trading Rule 502, paragraph 2; Silver Rule 1(b) and Gold Rule 1(b) (the "Straddle Session Rules"). These rules authorized Comex to conduct a special trading session limited exclusively to the trading of straddles *after the close of regular trading hours* (the "Straddle Session"). This Straddle Session was conducted under its own procedures whereby a Comex official would announce possible straddle month combinations, list all orders and then offset them to the extent possible.[14] Bidding or offering for the excess orders then takes place and the price established for these orders is applied retrospectively to cover all others. Thus, unlike straddle trades executed during the regular session, price is not established by competitive bids or offers for each straddle trade; further, trading during the session is limited to straddles.[15] Comex has conducted Straddle Sessions in silver futures on a regular basis for the last ten years. These Straddle Session Rules were in effect on July 18, 1975, when the Commission adopted Rule 1.53 requiring contract markets to enforce their existing rules unless disapproved by the Commission.

In August 1976, the Commission began its study of Comex's Straddle Session and in December of that year its staff presented a report recommending its elimination. Between that time and March 1980, under Commission instructions, the staff continued its examination of the Straddle Session. It met several times with members of Comex; received written submissions from Comex of its views as well as from others;

observed the operation of the Straddle Session on approximately 10 occasions and discussed its operation with floor traders and industry representatives.[16] On March 20, 1980 the staff notified Comex that it intended to recommend that the Commission disapprove the Straddle Session Rules and provided it with the reasons for its recommendation.[17] On June 30, 1980, the Commission gave public notice of its proposed disapproval of the Straddle Session Rules setting forth the grounds for disapproval, and inviting written comments from all interested persons.[18] In response, the Commission received an extensive comment letter from the President of Comex together with an economic study of the Straddle Session commissioned by Comex and letters from seven Comex member firms all in support of continuation of the Straddle Session.[19] Comex therein requested an opportunity to be heard orally or to submit an elaboration of its comments and arguments; however, this was not granted.

On April 21, 1981, the Commission held an "open meeting"[20] on the proposed rule disapproval. Such a meeting before the Commissioners is open only in the sense that the public may observe the meeting; it may not participate.[21] At the meeting, members of the Commission's staff made an oral presentation in support of its recommendation of disapproval and responded to questions from the Commissioners. A staff member in presenting the matter to the Commission noted that Comex and the staff had an exchange of views and that Comex disagreed with the recommended action.

---

· , at ⟶ " refers to the exhibit and page number of the Record.

**14.** Comex Brief at 19; Proposed Disapproval of Contract Market Rules, 45 Fed.Reg. 43,820 at 43,821 (1980).

**15.** Notice of Disapproval, 46 Fed.Reg. 23,516 at 23,519 (1981).

**16.** Memorandum in Opposition to Comex's Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment of the Commodity Futures Trading Commission at 11

& n.20 (hereinafter "Commission's Brief"); Record 6 at 3–5. ·

**17.** Record 7.

**18.** Proposed Disapproval of Contract Market Rules, 45 Fed.Reg. 43,820 (1980).

**19.** Record 13.

**20.** 5 U.S.C. § 552b(b) (1977); 17 C.F.R. § 147.1 (1981).

**21.** *Id.*

After consideration of Comex's written submission, the Commission voted to adopt its staff's recommendation of disapproval.[22]

The Commission's action did not eliminate straddle trading; such trades can still be conducted, as they always have been, on the floor of the Exchange during regular trading hours. Rather, its action was limited to disapproval of the rules under which the special Straddle Session was conducted after the close of regular trading hours. Notice of disapproval together with a detailed explanation of the Commission's reasons was published on April 27, 1981.[23]

## I.

Comex's first contention is that the Commission violated its rights under both the Administrative Procedure Act[24] and the due process clause of the Constitution by conducting the rule disapproval action under informal rulemaking procedures, thus limiting Comex's participation in the decisionmaking process to the submission of written comments. It is undisputed that the Commission's action was an exercise of informal rulemaking in accordance with section 553 of the APA. Such "notice and

**22.** Record 16, at 46.

**23.** Notice of Disapproval, 46 Fed.Reg. 23,516 (1981).

**24.** 5 U.S.C. § 551–706 (1977 & Supp. 1982).

**25.** 5 U.S.C. § 553 provides in part:
(b) General notice of proposed rule making shall be published in the Federal Register.... The notice shall include—
(1) a statement of the time, place, and nature of public rule making proceedings;
(2) reference to the legal authority under which the rule is proposed; and
(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

.  .  .  .  .

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise

comment" procedures require simply the publication of notice and an opportunity for the submission of written comments.[25] Comex argues that both the rule disapproval provision contained in section 5a(12) of the Act and the due process clause required the Commission to apply the trial-type procedures of APA section 556[26] used in formal rulemaking and adjudication which permits oral argument, presentation of evidence and cross-examination of witnesses. The Commission, contrariwise, claims that its rule disapproval decision was a proper exercise of informal rulemaking under section 553 and no additional participation by Comex was required.

While the parties have assumed that resolution of the proper procedure is an "either/or" choice turning upon whether the proceeding is characterized as rulemaking, which would be governed by the "notice and comment" requirements of section 553, or adjudication, triggering the trial-type hearing procedures of sections 556 and 557, the issue is not so readily resolved by mere "bright line" labeling of rulemaking versus adjudication.[27] Rather, its resolution turns upon the type of hearing Congress intended with respect to rule disapproval

general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

**26.** 5 U.S.C. § 556 provides in part:
(d) Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof.... A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. In rule making or determining claims for money or benefits or applications for initial licenses an agency may, when a party will not be prejudiced thereby, adopt procedures for the submission of all or part of the evidence in written form.

**27.** *See RCA Global Communications, Inc. v. FCC*, 559 F.2d 881, 886 (2d Cir. 1977); *Mobil Oil Corp. v. FPC*, 483 F.2d 1238, 1249–1252 (D.C.Cir.1973); *City of Chicago v. FPC*, 458 F.2d 731, 739 (D.C.Cir.1971), *cert. denied*, 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972).

proceedings.[28] The starting point, of course, is the language of the statute itself.[29]

Section 5a(12) provides in relevant part:

At least thirty days before approving any such bylaws, rules, regulations, and resolutions of major economic significance, as determined by the Commission, the Commission shall publish in the Federal Register such bylaws, rules, regulations and resolutions. The Commission shall give interested persons *an opportunity to participate in the approval process through the submission of written data, views or arguments.* The determination by the Commission whether any such bylaws, rules, regulations or resolutions are of major economic significance shall be final and not subject to judicial review. The Commission shall approve, within thirty days of their receipt (or within sixty days of their receipt if the Commission determines them to be of major economic significance) unless the Commission notifies the contract market of its inability to make such determination within such period of time, such bylaws, rules, regulations and resolutions upon a determination that such bylaws, rules, regulations, and resolutions are not in violation of the provisions of this chapter or the regulations of the Commission and thereafter *the Commission shall disapprove, after appropriate notice and opportunity for hearing,* any bylaw, rule, regulation, or resolution which the Commission finds at any time is in violation of the provisions of this chapter or the regulations of the Commission.[30]

The structure and language of the statute specify two separate rule review procedures: one with respect to proposed rules which require the Commission's approval and the other with respect to the Commission's proposed disapproval of existing or previously approved rules. In the former instance—that is, proposed rules—all "bylaws, rules, regulations, and resolutions" of a contract market are to be submitted to the Commission for its approval. Such proposed rules which the Commission determines to be of "major economic significance" are to be published and interested persons given "an opportunity to participate in the approval process through the submission of written data, views or arguments." Rules not so designated by the Commission may be approved or not without any participation by the exchange or others. The other procedure applies where rules have been approved and are in effect. In this instance, the Commission may thereafter disapprove a rule upon a finding that it is in violation of the Act or its regulations only after appropriate notice and "opportunity for hearing." Congress did not define this last phrase. Thus the disputed issue is the kind of a hearing contemplated by the term.

The Commission's position is that both a proposed rule review proceeding as well as a rule disapproval hearing may be conducted as informal rulemaking in accordance with the requirements of section 553 of the APA. The Commission contends that it satisfied its statutory obligation by publishing notice of its proposed action in the Federal Register and giving Comex an opportunity to submit written comments.[31]

---

28. *See United States v. Florida East Coast Railway Co.,* 410 U.S. 224, 238, 93 S.Ct. 810, 817, 35 L.Ed.2d 223 (1973); *AT&T Co. v. FCC,* 572 F.2d 17, 21 22 (2d Cir.), *cert. denied,* 439 U.S. 875, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978).

29. *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981); *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

30. 7 U.S.C. § 7a(12) (1980) (emphasis supplied).

31. The Commission's brief at one point contends that a disapproval hearing was not required for the Commission never formally approved Comex's rules and its action was in fact delayed rule review rather than a rule disapproval proceeding. Commission's Brief at 25–26. Such argument is disingenuous and indeed comes with ill grace. As noted above, when the Commission was created in 1974 it was unable to review all existing rules and so it passed Rule 1.53 requiring all exchanges to enforce their rules until "disapproved by the

According to the Commission, the difference in statutory language between initial rule review which requires notice and "opportunity to participate ... through the submission of written data, views or arguments" and rule disapproval action which requires "notice and opportunity for hearing" is merely "semantic" and it contends that the legislative history shows that the difference in language is "meaningless."[32]

The legislative history, however, does not provide clear evidence that Congress did not intend the plain difference in the words to be without effect.[33] Indeed that very difference precludes ready acceptance of the Commission's position that Congress was engaged in a semantic exercise. As originally enacted in 1974, section 5a(12) did not require any type of notice or participation in proposed rule review proceedings.[34] The section required that contract markets submit all proposed rules for approval to the Commission which became effective within 30 days upon a finding that they were not in violation of the Act. No public notice or opportunity for participation was afforded. In contrast, a hearing was required for proceedings to disapprove an existing rule. The statute provided, as it does currently, that the Commission could disapprove previously approved rules at any time if it found such rule violated the Act or the regulations of the Commission "after appropriate notice and opportunity for hearing."

In 1978 the statute was amended to include the requirement that proposed rules submitted for review, if of major economic significance, be published and interested persons be afforded an opportunity to submit written comments.[35] The amendment in effect was a restatement of the "notice and comment" procedure of informal rulemaking set forth in section 553 of the APA.[36] The similarity between the two statutes was not accidental. Representative AuCoin, the sponsor of the amendment, stated that the language tracked "as closely as possible" the principles embodied in the APA,[37] and he made it clear that the purpose of the amendment was "not [to] im-

---

Commission." *See* note 7 and accompanying text *supra.* Comex faced disciplinary action, including suspension or revocation of its contract market designation if it had failed to enforce the Straddle Rules as required by the Commission when it designated Comex as a contract market. *See* 7 U.S.C. §§ 7a(8), 7b (1980). In the light of the continued operation of the Straddle Rules over the six-year period, to say that it did not approve the rules is sheer sophistry. Upon the facts it is clear that the Commission's action was one of disapproval requiring "notice and opportunity for hearing." *See also* Letter of Commission Chairman Bagley (Accompanying Order of Designation), Record 6, Attachment 3 at 4.

**32.** Commission's Brief at 21.

**33.** *See Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("absent a clearly expressed legislative intention to the contrary, [the language of the statute] must ordinarily be regarded as conclusive").

**34.** Section 5a(12), 7 U.S.C. § 7a(12) (1976) previously provided in part:

The Commission shall approve, within thirty days of their receipt unless the Commission notifies the contract market of its inability to make such determination within such period of time, such bylaws, rules, regulations, and resolutions upon a determination that such bylaws, rules, regulations, and resolutions are not in violation of the provisions of this chapter or the regulations of the Commission and thereafter the Commission shall disapprove, after appropriate notice and opportunity for hearing, any bylaw, rule, regulation, or resolution which the Commission finds at any time is in violation of the provisions of this chapter or the regulations of the Commission.

**35.** Futures Trading Act of 1978, Pub.L. 95–405, § 12, 92 Stat. 865, 871 (1978).

**36.** Section 5a(12), as amended, provides that the "Commission shall give interested persons an opportunity to participate in the approval process through the submission of written data, views, or arguments." 7 U.S.C. § 7a(12) (1980). Section 553 of the APA provides that "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553 (1977 & Supp. 1982).

**37.** 124 Cong.Rec.H 7313 (daily ed., July 26, 1978) (statement of Rep. AuCoin).

pose additional unnecessary administrative burdens on the Commission."[38] Further, the amendment as originally drafted by him was far more extensive than the one proposed and was simplified after consultation with the Commission.[39]

The legislative history does not show, as the Commission contends, that Congress intended the clear difference in language to have no meaning. To the contrary, the legislative history shows that Congress intended only a minimal notice and comment requirement in the instance of proposed rule review proceedings and that the Commission was influential in assuring that such requirements be kept at a minimum. There is no support for the Commission's position that Congress intended such limited notice and comment procedures which it established for proposed rule review to apply in a proceeding to disapprove an existing rule. If Congress understood "opportunity for hearing" to mean only submission of written comments, then there is no explanation why it did not use identical language for both. Thus, even as an interpretation of a statute by an agency charged with its administration, the Commission's interpretation must be rejected. There is no reason to ignore the plain meaning of the statute and to fail to give effect to the

difference in language requiring a hearing in one part but not in another of the same provision.[40] To do otherwise would require a holding that "submission of written data, views or arguments" and "opportunity for hearing" are synonymous terms and thereby violate the basic tenet of statutory construction that significance should be given to every word in a statute.[41] However, having concluded that Congress intended, in the instance of a rule disapproval proceeding, something more than mere submission of written comments, the question remains what "opportunity for hearing" is required.[42]

Comex argues that the "something more" that Congress intended goes beyond informal notice and comment procedure—that it intended rule disapproval hearings to be governed by the trial-type procedures used for formal rulemaking and formal adjudication as set forth in sections 556 and 557 of the APA. This contention is negated by the legislative record. Such a giant leap ignores both the express provisions of the APA that such trial-type hearings are mandated only when the statute providing for the hearing requires that it be "on the record" and also that Congress, on two separate occasions, rejected the inclusion of an "on the record" provision.

38. *Id.* at H 7312.

39. *Id.* ("I have been in contact with the Commission on a different version of this amendment, which I must say in candor went far beyond the simple requirement of public notice. On that amendment, the Commission felt there was an overloading of the requirements that were unnecessary for the execution of its functions.")

40. *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 31, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1980) ("the interpretation put on the statute by the agency charged with administering it is entitled to deference (citation omitted), but the courts are the final authorities on issues of statutory construction"); *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 556 57, 99 S.Ct. 790, 794, 58 L.Ed.2d 808 (1979); *Time, Inc. v. United States Postal Service*, 685 F.2d 760 at 771 (2d Cir. 1982).

41. *American Textile Mfg. Institute, Inc. v. Donovan*, 452 U.S. 490, 513, 101 S.Ct. 2478, 2492, 69 L.Ed.2d 185 (1981); *Iafrate v. Compagnie Generale Transatlantique*, 106 F.Supp. 619 & n.5 (1952).

42. It may be acknowledged that had the section remained as enacted in 1974 containing the reference only to "an opportunity for hearing" and had not the amendment of 1978 added "an opportunity to participate" under appropriate circumstances, an oral hearing would not necessarily be mandated. *See Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.*, 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978); *AT&T Co. v. FCC*, 572 F.2d 17, 22 (2d Cir.), *cert. denied*, 439 U.S. 875, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978); *Mobil Oil Corp. v. FPC*, 483 F.2d 1238, 1259 (D.C.Cir.1973). But the 1978 amendment clearly indicates a difference in the procedures to be applied in the instance of a proposed rule review and disapproval of an existing rule.

The APA mandates a trial-type hearing in rulemaking or adjudication only when the statute specifies that it be made "on the record." [43] Section 5a(12) of the Act contains no such provision. Moreover, as the Supreme Court in *Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.* has clearly instructed, generally agencies should be free to fashion their own rules of procedure absent a congressional requirement that the hearing be "on the record" or some similar expression of intent that the more formal procedures of sections 556 and 557 apply. [44]

■ The legislative history shows that Congress twice declined to include an "on the record" requirement for rule disapproval hearings. [45] In 1974, in enacting section 5a(12), Congress was presented with a clear choice of whether to require rule disapproval hearings "on the record." The Senate version of the provision included such a requirement; the House bill did not. [46] Congress adopted the House version, as amended, and without the "on the record" requirement. [47]

When amending the Act in 1978, Congress again was asked to add an "on the record" provision. A number of exchanges, [48] including Comex, [49] requested Congress to include an "on the record" requirement in several provisions of the Act including the rule disapproval section. While the Commission supported the addition of an "on the record" hearing in several instances, it opposed such an amendment for rule disapproval proceedings. [50] Congress, while amending some of the provisions to include an "on the record" requirement, declined to so amend the rule disapproval section. [51] The Senate Report leaves no doubt that its intent was not to require full trial-type hearings in such instances. [52]

■ Despite this overwhelming evidence of Congressional intent, Comex argues that the absence of an "on the record" requirement is not dispositive. It presses that the rule disapproval action is "adjudicatory" in

**43.** 5 U.S.C. §§ 553(c), 554(a) (1977 & Supp. 1982). *See AT&T Co. v. FCC*, 572 F.2d 17, 22 (2d Cir.), *cert. denied*, 439 U.S. 875, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978).

**44.** 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978); *United States v. Florida East Coast Railway*, 410 U.S. 224, 234, 237–38, 93 S.Ct. 810, 815, 817, 35 L.Ed.2d 223 (1973).

**45.** Failure to amend a statute is some evidence of congressional intent. *North Haven Bd. of Ed. v. Bell*, - - U.S. ——, ——, 102 S.Ct. 1912, 1917, 72 L.Ed.2d 299 (1982); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 732–34, 95 S.Ct. 1917, 1924, 44 L.Ed.2d 539 (1975).

**46.** *Compare* S. 2837, 93d Cong., 1st Sess. § 202(2) (1973) *with* H.R.13113, 93d Cong., 2d Sess. § 210 (1974).

**47.** House Conference Report 1383, 93d Cong., 2d Sess. 5, *reprinted in* 1974 U.S.Code Cong. & Ad.News 5894, 5898.

**48.** *See* H.R.Rep.No.1181, 95th Cong., 2d Sess. 43 (1978); Hearing on H.R.10285 Before the Subcomm. on Conservation and Credit of the House Committee on Agriculture, 95th Cong., 2d Sess. 282, 309, 460 (1978) [hereinafter "1978 House Hearings"]; Hearings on the Reauthorization of the Commodity Futures Trading Commission (S.2391) Before the Subcomm. on Agriculture, Research and General Legislation of the Senate Committee on Agriculture, Nutrition and Forestry, 95th Cong., 2d Sess. Pt. II 504, 606, 608, 663 (1978) [hereinafter "1978 Senate Hearings"].

**49.** 1978 House Hearings, *supra* note 48 at 334; 1978 Senate Hearings, *supra* note 48 at 445.

**50.** 1978 House Hearings, *supra* note 48, at 590–91 (statements of Commission Chairman Bagley, and Commissioners Seevers and Dunn).

**51.** Congress added an "on the record" requirement for hearings under section 6, 7 U.S.C. § 8 (rejection of an application for designation as a "contract market"); section 6(a), 7 U.S.C. § 8(a) (suspension or revocation of contract market designation); and section 6b, 7 U.S.C. § 13a (cease and desist orders; fines and penalties). *See* S.Rep.No.850, 95th Cong., 2d Sess. 29 *reprinted in* 1978 U.S.Code Cong. & Ad. News 2087, 2117 (hereinafter "1978 Senate Report").

**52.** 1978 Senate Report, *supra* note 51, at 29, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 2117 ("the Committee concluded that the imposition of a requirement for a hearing on the record for rulemaking proceedings by the Commission would be extremely burdensome and would not avail the Commission of any information that it is not currently receiving in these proceedings").

nature and this alone requires that the proceeding use a full trial-type hearing.[53] However, the very cases Comex cites to support its position recognize that regardless of the label attached to the proceeding, it is the intent of Congress that governs the procedures used.[54] Just as Congress may authorize participation by interested parties beyond the minimum established for rulemaking by the notice and comment procedures of section 553 of the APA, so, too, it may adopt some but not all of the more formal requirements of trial-type hearing for adjudication or formal "on the record" rulemaking as specified by sections 556 and 557.[55] As explained by the Court in *RCA Global Communications, Inc. v. FCC*,[56] resolution of the form of hearing is determined on basis of the "requirements of the particular case."

The emphasis, today, in the absence of a specific statutory directive as to the requisite form of hearing, is on the requirements of the particular case, not on formalistic interpretations of statutory words, and not on the equally formalistic and often circular distinction between adjudication and rulemaking.[57]

To establish the form of hearing required by the Act, it is thus necessary to focus on the "requirements of the particular case"; particularly the type of facts the Commission had to resolve.[58]

---

**53.** *See Seacoast Anti-Pollution League v. Costle,* 572 F.2d 872, 876 (1st Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978); *Marathon Oil Co. v. EPA,* 564 F.2d 1253, 1262 64 (9th Cir. 1977).

**54.** *Seacoast Anti-Pollution League v. Costle,* 572 F.2d 872, 878 (1st Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978) ("of course, the foregoing discussion is inapplicable to any situation in which the legislative history or the context of the pertinent statute indicates a contrary congressional intent") (quoting Attorney General's Manual on the Administrative Procedure Act 42 (1947)); *Marathon Oil Co. v. EPA,* 564 F.2d 1253, 1263 & n.3 (9th Cir. 1977) (same). Thus, for example, in *United States v. Florida East Coast Railway,* 410 U.S. 224, 238, 93 S.Ct. 810, 817, 35 L.Ed.2d 223 (1973) after holding that absence of a requirement that the hearing be "on the record" meant that sections 556 and 557 of the APA did not apply, the Court stated: "Thus, even though the Commission was not required to comply with §§ 556 and 557 of that Act, it was required to accord the 'hearing' specified in section 1(14)(a) of the Interstate Commerce Act." *Id.* at 238, 93 S.Ct. at 817.

**55.** *See, e.g.,* National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381, 1410b(c)(2) ("the Secretary shall afford interested persons an opportunity for oral as well as written presentation of data, views, or arguments"); Toxic Substances Control Act, 15 U.S.C. §§ 2601, 2605(c)(3) (1982) (requiring "informal hearings" where interested persons may present their position orally or by documentary submissions (or both) and if the Administrator determines there are disputed issues of material fact, to present rebuttal submissions and to conduct such cross-examination as the Administrator determines appropriate). *See generally United States Lines Inc. v. Federal Maritime*

*Comm'n,* 584 F.2d 519, 536–37 (D.C.Cir.1978); *Mobil Oil Corp. v. FPC,* 483 F.2d 1238, 1252–54 (D.C.Cir.1973).

**56.** 559 F.2d 881 (2d Cir. 1977); *accord City of Chicago v. FPC,* 458 F.2d 731, 739 (D.C.Cir. 1971), *cert. denied,* 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972) ("In many cases it is unnecessary, and even unwise, to classify a given proceeding as either adjudicatory or rulemaking. The line between the two is frequently a thin one and resolution of a given problem will rarely turn wholly on whether the proceeding is placed in one category or the other. Moreover, obsession with attempts to place agency action in the proper category may often obscure the real issue which divides the parties and requires resolution.")

**57.** *RCA Global Communications, Inc. v. FCC,* 559 F.2d 881, 886 (2d Cir. 1977). In *RCA Global,* the court held that five rounds of written comments over three years aided by a lengthy statistical study satisfied the "full hearing" required by the statute in the absence of any specific reason for oral hearing or cross-examination of witnesses. *Id.* at 886–87.

**58.** *Id.* at 886. *See Bell Telephone Co. v. FCC,* 503 F.2d 1250, 1268 & n.26 (3d Cir. 1974), *cert. denied,* 422 U.S. 1026, 95 S.Ct. 2620, 45 L.Ed.2d 684 (1975) ("[A] growing body of case law and scholarly discussion has indicated that hybrid proceedings, tailored to the types of issues contested, appear to be a salutory alternative to efforts to sketch a rigid demarcation") (footnotes omitted) (quoting *Duquesne Light Co. v. EPA,* 481 F.2d 1, 5–6 (3d Cir. 1973)); *see, e.g., International Harvester Co. v. Ruckelshaus,* 478 F.2d 615, 630 (D.C.Cir.1973); *United States Lines, Inc. v. Federal Maritime Commission,* 584 F.2d 519, 536–37 (D.C.Cir.1978); *United States v. FCC,* 652 F.2d 72, 92 (D.C.Cir.1980).

The Commission's inquiry was directed to whether there was a need for a special Straddle Session after the close of the regular trading session and to determine whether the manner in which straddle trading was conducted during the special after-hours session was consistent with the policies and requirements of the Act and the Commission's regulations. The Commission found [59] that the Straddle Session as conducted violated the requirement that trading orders be executed by open and competitive public outcry as specified in section 4b of the Act [60] and Commission regulation 1.38.[61] It concluded that the Comex procedure did not allow for a fully competitive determination of price and that the Straddle Session interfered with the Exchange's ability to function as a centralized marketplace.[62] Finally, that upon consideration of the proffered benefits of the session and the purposes and policies of the Act, no continued exemption from the non-competitiveness requirements was appropriate.[63]

Comex challenges the Commission's finding that because the Straddle Session diverted volume from the regular trading session it diminished the Exchange's character as a centralized marketplace and hampered its ability to function as a vehicle for price discovery and hedging.[64] It claims that any diversion is more than offset by the beneficial elimination of congestion and facilitation of straddle trading which the special session provides.[65] However, assessment of the impact of such diversion on the market's functioning and the evaluation of its impact on any countervailing benefits are precisely the type questions that are entrusted to the Commission in reliance upon its experience and expertise. Resolution of such matters "depend[s] to a greater extent upon policy judgments and less upon purely factual analysis." [66] As the Supreme Court has recognized, such issues are "primarily of a judgmental or predictive nature" and do not require factual support in a record.[67]

**59.** Rule Disapproval Notice, 46 Fed.Reg. 23,516 at 23,516 (1981).

**60.** 7 U.S.C. § 6b (1980) prohibits those involved in futures trading from engaging in fraudulent conduct and in addition provides in part:

Nothing in this section or in any other section of this chapter shall be construed to prevent a futures commission merchant or floor broker who shall have in hand, simultaneously, buying and selling orders at the market for different principals for a like quantity of a commodity for future delivery in the same month, from executing such buying and selling orders at the market price: *Provided*, that any such execution shall take place on the floor of the exchange where such orders are to be executed at public outcry across the ring and shall be duly reported, recorded, and cleared in the same manner as other orders executed on such exchange. . . .

**61.** 17 C.F.R. § 1.38 (1981). Rule 1.38 provides in part:

(a) Competitive execution required: exceptions. All purchases and sales of any commodity for future delivery on or subject to the rules of a contract market shall be executed openly and competitively by open outcry or posting of bids and offers or by other equally open and competitive methods, in the trading pit or ring or similar place provided by the contract market, during the regular hours prescribed by the contract market for

trading such commodity: *Provided, however,* That this requirement shall not apply to such transactions as are executed noncompetitively in accordance with written rules of the contract market which have been submitted to and approved by the Commission, specifically providing for the noncompetitive execution of such transactions.

**62.** Rule Disapproval Notice, 46 Fed.Reg. 23,516 at 23,518–22 (1981).

**63.** *Id.* at 23,519–23.

**64.** Hedgers are producers, processors, traders and consumers of the physical commodity who use the futures market not to seek profit, but to avoid, or hedge against, the risk that the price of the commodity will change adversely to protect their dealings in the physical commodity from loss. *See generally Merrill Lynch, Pierce, Fenner & Smith v. Curran,* —— U.S. ——, ——, 102 S.Ct. 1825, 1827, 72 L.Ed.2d 182 (1982).

**65.** *See* Comex Comment Letter, Record 13, at 6–30.

**66.** *United States v. FCC,* 652 F.2d 72, 93 (D.C. Cir.1980).

**67.** *FCC v. National Citizens Comm. for Broadcasting,* 436 U.S. 775, 813–14, 98 S.Ct. 2096, 2121, 56 L.Ed.2d 697 (1978); *National Small Shipments Traffic Conference, Inc. v. CAB,* 618 F.2d 819, 829–30 (D.C.Cir.1980).

Their resolution is not aided by and does not require trial-type hearing [68] for they are the kind of issues "where a month of experience will be worth a year of hearings." [69]

Examination of the record shows that the Commission's action was rulemaking in nature. Its inquiry into the operation of the Straddle Rules involved consideration of general economic and policy matters upon which it based its judgment. Its ultimate determination was not only of particular applicability to Comex, but also established a policy which applied to all contract markets in the same manner. The fact that Comex's past experience provided the concrete factual situation the Commission used to formulate its legislative judgment does not detract from the rulemaking character of the inquiry.[70] As the Court in *AT&T Co. v. FCC* explained, Congress recognized that informal rulemaking could include an examination of past practice in order to prescribe rules for the future.[71] Nor does the focus on Comex alter this conclusion. As the Court in *Hercules, Inc. v. EPA* observed, even when only one entity is the immediate subject of an agency's action, this alone does not change its rulemaking nature for other entities may nevertheless be affected.[72] As the Commission pointed out, disapproval of a contract market rule often affects the interests of other exchanges and market participants, particularly traders. In order to allow the participation of all concerned, only rulemaking, not adjudication, provides the appropriate procedural format.[73] In the circumstances of this case, a trial-type hearing was not required. Nonetheless, the question still remains as to what kind of "opportunity for hearing" is to be afforded when the Commission proposes to disapprove an existing rule under section 5a(12).

Comex contends that at the very least the hearing should afford it the opportunity to make an oral presentation of its position. It argues that to deny this would not only be contrary to the Congressional intent but would be to its prejudice. It points to what transpired at the opening hearing conducted on April 21, 1980 when the Commission considered the staff members' recommendation that the Straddle Rules be disapproved and Comex had no opportunity to respond; it contends the staff members lacked basic information to answer a number of questions from Commission members concerning the operation of the Straddle Session [74] and, in some instances, made inaccurate statements and arguments. Additionally, Comex urges that even if the proceeding be deemed rulemaking, nevertheless, it is entitled to examine and cross-examine witnesses; otherwise, it will be unduly prejudiced. As to the latter contention, Comex has failed to advance any specific reason for the necessity of a trial-type hearing or why a written submission and oral presentation will not afford it adequate and ample opportunity to present fully all data and arguments in support of a continuance of the Straddle Rules.[75] As our Court of Appeals noted when the plaintiff complained of the denial of an evidentiary hearing, "when as here, a new policy is based upon the general characteristics of an industry, rational deci-

---

**68.** *AT&T Co. v. FCC*, 572 F.2d 17, 23 (2d Cir.), *cert. denied*, 439 U.S. 875, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978); *see Independent Bankers Ass'n v. Board of Governors of the Federal Reserve System*, 516 F.2d 1206, 1215 (D.C.Cir. 1975); *WBEN, Inc. v. United States*, 396 F.2d 601, 618 (2d Cir.), *cert. denied*, 393 U.S. 914, 89 S.Ct. 238, 21 L.Ed.2d 200 (1968).

**69.** *American Airlines, Inc. v. CAB*, 359 F.2d 624, 633 (D.C.Cir.), *cert. denied*, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966); *see also SEC v. Frank*, 388 F.2d 486, 491–92 (2d Cir. 1968).

**70.** *Hoffman-LaRoche, Inc. v. Kleindienst*, 478 F.2d 1, 13 (3rd Cir. 1973).

**71.** 449 F.2d 439, 455 (2d Cir. 1971).

**72.** 598 F.2d 91, 118 (D.C.Cir.1978).

**73.** *Id.* at 118; *Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301, 1306 (10th Cir.1973).

**74.** *See* Record 16, at 10–14.

**75.** *See RCA Global Communications, Inc. v. FCC*, 559 F.2d 881, 886–87 (2d Cir. 1977); *American Public Gas Ass'n v. FPC*, 498 F.2d 718, 723 (D.C.Cir.1974); *Ethyl Corp. v. EPA*, 541 F.2d 1, 53 n.124 (D.C.Cir.), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976).

sion is not furthered by requiring the agency to lose itself in an excursion into detail that too often obscures fundamental issues rather than clarifies them."[76] Finally, and more important, as previously noted, Congress clearly refused to provide trial-type procedures by its rejection of an "on the record" hearing for rule disapproval action.

The Commission, on the other hand, opposes even a hearing which will permit an oral presentation. It contends that it will serve no useful purpose with respect to the issues it is called upon to resolve in a disapproval proceeding which concerns policy judgments with respect to the after-hour straddle session and whether any of its consequences run afoul of the statute or any regulation in protecting the overall public interest. It points out that Comex is a sophisticated organization of experience and has available highly skilled professional assistance; that in response to the public notice when action was contemplated with respect to the Straddle Rules, Comex submitted detailed written comments prior to the final meeting at which action was taken and that on at least two occasions, its representatives met and discussed with members of the staff their views and opposition to the proposed disapproval of the rules. Consequently, the Commission urges that an oral presentation would only serve to delay and hinder its proceedings and that a writ- ten submission will afford Comex an adequate opportunity to present its position and to oppose any counter-position.

The Court does not agree. The Court having found that Congress intended that something more than a written submission was required, further finds upon the "requirements of this case,"[77] that a hearing is required to afford Comex an opportunity to make an oral presentation.[78] Since the Commission permitted its own staff to make oral statements in support of its recommendation for disapproval, to respond to questions by the Commission, and to negate Comex's prior written submission, there is no reason why Comex should not be afforded a similar opportunity.[79] Indeed, in the circumstances of this case, simple fairness requires that it should not be denied the opportunity to respond. It will afford flexibility of argument and permit Comex to respond to the concerns of the Commission.[80]

█ Comex also contends that the disapproval of its Straddle Session Rules was a partial revocation of its license and that the due process clause requires it be granted a trial-type hearing. Even assuming the correctness of its categorization, a point disputed by the Commission, the hearing provided did not violate due process. Comex officials met with the Commission staff on

**76.** *WBEN, Inc. v. United States*, 396 F.2d 601, 618 (2d Cir.), *cert. denied*, 393 U.S. 914, 89 S.Ct. 238, 21 L.Ed.2d 200 (1968).

**77.** *See RCA Global Communications, Inc. v. FCC*, 559 F.2d 881, 885–86 (2d Cir. 1977); *Western Union International Inc. v. FCC*, 568 F.2d 1012, 1018 (2d Cir. 1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *AT&T Co. v. FCC*, 572 F.2d 17, 22 (2d Cir.), *cert. denied*, 439 U.S. 875, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978).

**78.** It is precisely this opportunity for an oral presentation in addition to submission of written comments that Congress provided in its much fuller statement of the hearing required in similar proceedings established for SEC review and disapproval of security exchange rules. *See* 15 U.S.C. § 78s(c) (1981). *Stribling v. United States*, 419 F.2d 1350, 1352 (8th Cir. 1969) (construction of a statute by reference to another not strictly *in pari materia* by way of analogy); C. Sands, Statutes and Statutory Construction, § 51.03 (4th ed. 1972); K. Davis, Administrative Law Treatise, § 6:9 at 481–82 (2d ed. 1978).

**79.** Providing Comex an opportunity for oral presentation of its views resolves its claim that providing only the staff with such an opportunity was an *ex parte* communication in violation of 5 U.S.C. § 554(d) (1977). *See Butz v. Economou*, 438 U.S. 478, 514, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978); *Hercules, Inc. v. EPA*, 598 F.2d 91, 124–27 (D.C.Cir.1978); *but see United Steelworkers of America v. Marshall*, 647 F.2d 1189, 1214–16 (D.C.Cir.1980), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3149, 69 L.Ed.2d 997 (1981).

**80.** *Cf. Mathews v. Eldridge*, 424 U.S. 319, 345, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976) (citing *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970)).

at least two separate occasions; it was fully informed of the reasons the Commission was considering disapproval of the rules; and was provided with an opportunity to submit written comments, including an economic study it commissioned. In addition, after the rule disapproval decision was made, it was given 60 days before the disapproval became effective to submit any additional material. When dealing with an experienced and knowledgeable party with the capacity to engage expert professional assistance such as Comex, such procedures provided it with a fair and meaningful opportunity to be heard; due process requires no more.[81]

## II.

■ Comex further challenges the Commission's action on the ground that it exceeded its authority by basing its decision on criteria which may not be considered in a rule disapproval proceeding. The statute provides that the Commission may disapprove a rule if it finds it "in violation of the provisions of the chapter or the regulations of the Commission."[82] Comex claims that the Commission improperly relied on or considered: (1) general policy considerations not embodied in any specific provision or regulation; (2) the public interest requirement of section 5(g);[83] and (3) the antitrust concerns set forth in section 15 of the Act.[84]

As to this latter contention, section 15 provides in part:

The Commission shall take into consideration the public interest to be protected by the antitrust laws and endeavor to take the least anticompetitive means of achieving the objectives of this chapter, as well as the policies and purposes of this chapter, in issuing any order or adopting any Commission rule or regulation, *or in requiring or approving any bylaw, rule or regulation of a contract market* ....[85]

Comex concedes[86] that the Commission is required by section 15 to consider the least anticompetitive means of achieving its objectives both in its initial review of proposed rules under section 5a(12) and also when ordering alterations to contract market rules under section 8a(7).[87] It argues, however, that the Commission may not include this factor in a rule disapproval action for Congress failed to specifically include rule disapproval in section 15. This limiting interpretation of the language "in requiring or approving any bylaw, rule or regulation of a contract market" as prohibiting such consideration in rule disapproval decisions is inconsistent with both the language and purposes of the Act.[88] To allow the Commission initially to refuse to approve a rule because of such considerations, and also to alter or supplement a rule under section 12a(7) on such basis, but to deny it the

---

81. *See Mathews v. Eldridge*, 424 U.S. 319, 334, 343 49, 96 S.Ct. 893, 906, 47 L.Ed.2d 18 (1976); *Bell Telephone Co. v. FCC*, 503 F.2d 1250 (3d Cir. 1974); *American Public Gas Ass'n v. FPC*, 498 F.2d 718, 723 (D.C.Cir.1974); *Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301, 1307 (10th Cir. 1973).

82. 7 U.S.C. § 7a(12) (1980).

83. 7 U.S.C. § 7(g) (1980).

84. 7 U.S.C. § 19 (1980).

85. *Id.* (emphasis supplied).

86. Comex Brief at 54, 57.

87. Section 8a(7), 7 U.S.C. § 12a(7) (1980) provides in part:
   [The Commission is authorized] to alter or supplement the rules of a contract market insofar as necessary or appropriate by rule or regulation or by order, if after making the

appropriate request in writing to a contract market that such contract market effect on its own behalf specified changes in its rules and practices, and after appropriate notice and opportunity for hearing, the Commission determines that such contract market has not made the changes so required, and that such changes are necessary or appropriate for the protection of persons producing, handling, processing or consuming any commodity traded for future delivery ... or for the protection of traders or to insure fair dealings in commodities traded for future delivery on such contract market.

88. *See also* H.R.Rep.No.975, 93d Cong., 2d Sess. 28 (1974) (the "Committee intends that the new Commission consider antitrust policy when ... reviewing, approving (or disapproving), or requiring rules, regulations and bylaws").

authority to disapprove it for exactly the same reasons is an arbitrary fragmentation of the Commission's authority which would frustrate its supervisory role. Experience may well have demonstrated the need for such action.

Section 5(g) [89] provides that the Commission consider whether the "public interest" would be served by designating, and continuing to designate, a board of trade as a contract market in a particular commodity, which includes as one of its components consideration of the economic purpose to be served. Comex contends that consideration of the public interest is relevant only to the designation of a board of trade and that the Commission improperly considered whether the Straddle Rules served the public interest with its economic purpose component. In short, that the Commission's final approval failed to keep the section 5(g) public interest considerations separate from its decision whether the Comex Straddle Rules violated section 4b of the Act [90] and Regulation 1.38 [91] which prohibit particular transactions. Further, although Comex concedes that once a rule is approved, the Commission may proceed to alter or supplement it under section 8a(7) on the grounds that it is inconsistent with the general purposes of the Act, nevertheless, it contends that the Commission may not disapprove a rule for such reasons. [92]

Each of these contentions is without merit. The Commission in its official interpretation of the standards for rule disapproval has rejected the type of limiting construction of the statute proposed by Comex. [93] The Commission noted that under such an interpretation it would be placed in the inconsistent position of having the power to alter or supplement a rule under section 12a(7) but not to disapprove it. [94] It rejected this narrow and contradictory reading of the statute after a careful review of the legislative history and the purposes of its rule review function. It concluded that in rule disapproval proceedings it may consider whether the rule conflicts or is "inconsistent with any of the policies, purposes and public interest considerations embodied in the Act and the Commission's regulations" [95] including (1) its economic purpose as one of the components of the public interest standard in section 5(g); (2) the least anticompetitive means requirement of section 15; and (3) other general public policy considerations. As an interpretation of a statute by the agency charged with its administration it is entitled to deference unless clearly erroneous. [96] The Commission's interpretation is consistent with the statutory scheme established by Congress to provide the Commission with both strong and flexible supervisory authority over contract market rules. Moreover, acceptance of Comex's interpretation would sterilize the Commission's delegated authority and place artificial encumbrances upon the Commission's rule review responsibility. [97]

Finally, Comex challenges the Commission's decision as arbitrary and capricious. However, since a new hearing must be held, it is unnecessary to decide the issue of whether the Commission's decision was adequately supported by the record. [98]

Plaintiff's motion for summary judgment is granted only to the extent of vacating

---

**89.** 7 U.S.C. § 7(g) (1980).

**90.** 7 U.S.C. § 6b (1976).

**91.** 17 C.F.R. § 1.38 (1981).

**92.** Comex Brief at 50-53.

**93.** Standards For Disapproving Rules, 45 Fed. Reg. 34,873 (1980).

**94.** *Id.* at 34,874.

**95.** *Id.*

**96.** *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 287 n.5, 98 S.Ct. 566, 574 n.5, 54 L.Ed.2d 538 (1978); *E.I. DuPont De Nemours & Co. v. Collins*, 432 U.S. 46, 54–55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). *See also supra* note 40.

**97.** *See generally Smith v. Grover*, 468 F.Supp. 105, 109--110 (N.D.Ill.1979) (discussing the legislative history).

**98.** *See Seacoast Anti-Pollution League v. Costle*, 572 F.2d 872, 873 (1st Cir. 1978).

the Commission's disapproval of the Comex Straddle Rules, with instructions to provide Comex an oral hearing upon notice pursuant to section 553 of the APA, as provided herein.[99] Whether such oral presentation will be more persuasive than its written submission is for the Commission to decide after affording Comex the oral hearing. In all other respects, Comex's motion is denied. Defendant's cross-motion for summary judgment is granted except as to the requirement for an oral hearing as indicated.

So ordered.

---

**99.** *Cf. RCA Global Communications, Inc. v.* *FCC,* 559 F.2d 881, 885 (2d Cir. 1977).